UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROADWAY ENGINEERING WORKS, INC., a California corporation, individually and doing business as ROADWAY ELECTRICAL WORKS, INC.; DARLENE CODDINGTON, an individual; RANDY MORISOLI, an individual; MARLENE MCDEVITT, an individual; and ROBERT MCDEVITT, an individual,<br><br>Defendants. | CIV NO.: 1:16-00070 WBS SKO<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT</u> |

----oo0oo----

Plaintiff Great American Insurance Company ("Great American") brought this action, alleging that defendants Roadway Engineering Works, Inc., doing business as Roadway Electrical Works, Inc. ("Roadway"), Darlene Coddington, Randy Morisoli, and

1

Marlene and Robert McDevitt breached two separate indemnity agreements.[1]  The McDevitts are the only remaining defendants in this action.  Great American now moves for summary judgment against the McDevitts pursuant to Federal Rule of Civil Procedure 56 on its claims for breach of the indemnity agreements.

I.   Factual and Procedural History

On August 30, 2006, and March 10, 2010, the parties entered into two separate indemnity agreements ("Indemnity Agreements").  (Ballinger Decl. ¶¶ 9-10, Exs. 1-2 (Docket No. 44-7).)  Both Indemnity Agreements begin by stating: "This Agreement binds the undersigned . . . jointly, severally and/or collectively, to Surety in connection with all Bond(s) heretofore or hereafter executed, provided or procured by Surety."  (Id. Exs. 1-2.)

The Indemnity Agreements require that the Undersigned--Roadway, Coddington, Morisoli, and the McDevitts--indemnify the Surety, Great American, from any liability for bonds that Great American issues on behalf of Roadway.  (Id.)  Coddington, Morisoli, and the McDevitts signed both agreements in their individual capacity.  (Id.)  The Indemnity Agreements specifically contain the following provisions in paragraphs two and sixteen:

> The Undersigned, jointly and severally, shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or

---

[1]   Plaintiff's Complaint also includes claims for equitable indemnity, Quia Timet and injunctive relief, specific performance, fraud, and breach of fiduciary duty.  (First Am. Compl. (Docket No. 6).)  Such relief is not at issue in the instant motion.

2

> nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of being requested to execute or procure, or having executed or procured the execution of the Bonds on behalf of any of the Undersigned, (2) By reasons of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement . . . . In the event of any payment of any kind by the Surety, the Undersigned further agree that in any accounting between the Surety and the Undersigned, the surety shall be entitled to charge for any and all disbursements made by the Surety in good faith in and about the matters herein contemplated by the Agreement under the belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers, invoices, an affidavit or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the Undersigned's liability to the Surety. . . .
>
> In the event that Surety shall file suit at law or equity to enforce the terms of this Agreement, Surety shall be entitled to recover its own attorney's fees and expenses in connection with such suit.

(Id.)

After the execution of each Indemnity Agreement, Great American issued several surety bonds that held it secondarily liable as the surety for performance or payment by the principal, Roadway, in various construction projects. (Id. ¶¶ 9, 11, 13-14, Exs. 3A-3C, 4A-4H.)

Later, suppliers, subcontractors, and bond obligees alleged that Roadway defaulted or did not perform on several of these bonds and filed claims with Great American. (Id. ¶ 16, Exs. 5-29.) In total, these parties submitted thirty-three claims against the bonds. (See id. Exs. 5-29; Cabal Decl. Ex. B (Docket No. 44-5).) Pursuant to the terms of the Indemnity

3

1  Agreements, Great American requested that defendants reimburse,
2  exonerate, and indemnify Great American for these claims.
3  (Ballinger Decl. ¶¶ 18-20, Exs. 30-32.)  Great American received
4  no response from defendants and paid the claimants several months
5  later.  (Id. ¶ 20.)
6        Great American has provided an Accrued Interest
7  Calculation for each payment it made to claimants that are
8  covered by the Indemnity Agreements, detailing the payments made
9  and the interest rate of each payment.  (Cabal Decl. ¶ 3, Ex. B.)
10 As of July 8, 2016, Great American has incurred $2,579,170.90 in
11 payments and $166,077.10 in expenses, excluding attorneys' fees
12 and interest.  (Ballinger Decl. ¶ 23, Ex. 35.)  Under a
13 calculation of interest at 10 percent per annum, interest on the
14 payments is $131,285.39.  (Cabal Decl. Ex. B.)  Great American
15 seeks a total of $2,876,633.39.
16       Great American initiated this action, alleging
17 defendants failed to indemnify Great American as required by the
18 Indemnity Agreements.  After filing for Chapter 7 bankruptcy,
19 defendants Roadway, Morisoli, and Coddington were dismissed from
20 this action.  (Docket Nos. 40, 43.)
21       Pursuant to Federal Rule of Civil Procedure 56, Great
22 American moves for summary judgment on its two breach of contract
23 causes of action against the McDevitts for failure to indemnify
24 Great American.  (Docket No. 44-1.)
25 II.  Legal Standard
26       Summary judgment is proper "if the movant shows that
27 there is no genuine dispute as to any material fact and the
28 movant is entitled to judgment as a matter of law."  Fed. R. Civ.

4

P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)).  The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id.

III. Discussion

California law has long recognized the right of a surety, such as Great American, to receive indemnification under the terms of a written indemnity agreement. See, e.g., Fid. & Deposit Co. of Md. v. Whitson, 187 Cal. App. 2d 751, 756 (2d Dist. 1960). "An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract." Myers Bldg. Indus., Ltd. v. Interface Tech., Inc., 13 Cal. App. 4th 949, 968 (2d Dist. 1993).

In order to demonstrate a valid claim for breach of an indemnity agreement under California law, a plaintiff must demonstrate the existence of an indemnity agreement, the plaintiff's performance under the agreement, breach of the agreement, and damages. See Reichert v. Gen. Ins. Co. of Am., 68 Cal. 2d 822, 830 (1968).

A.   Existence of Agreement and Plaintiff's Performance

It is undisputed that indemnity agreements exist here. The Agreements contain clauses that indemnify Great American "from and against any and all such losses and/or expenses which [Great American] may sustain and incur [b]y reason of having executed or procured the execution of Bonds on behalf of any of the Undersigned . . . ." (Ballinger Decl. Exs. 1-2.)  Great American performed under the Indemnity Agreements by issuing payment and performance bonds on behalf of Roadway, an Undersigned.

6

B.     Breach of Indemnity Agreement

When a surety presents evidence of its payments pursuant to a prima facie evidence clause, such as that provided in the two Indemnity Agreements,[2] the burden shifts to the indemnitors to prove that the surety cannot recover the fees. Travelers Cas. & Surety Co. of Am. v. Dunmore, No. Civ. 2:07-2493 LKK DAD, 2009 WL 1586936, at *10 (E.D. Cal. June 5, 2009) (citing Fallon Elec. Co. v. Cincinnati Ins. Co., 121 F.3d 125, 128 (3d Cir. 1997)); see also First Nat'l Ins. Co. of Am. v. Hunt, No. Civ. 2:10-1339 WBS GGH, 2011 WL 2173765, at *3 (E.D. Cal. June 2, 2011). "Provisions in indemnity agreements . . . providing that vouchers and other evidence of payment shall be prima facie evidence of the propriety thereof, have been upheld as not against public policy and enforced by the courts." Transamerica Ins. Co. v. Bloomfield, 401 F.2d 357, 362 (6th Cir. 1968).

A defendant does not need to indemnify a plaintiff if the plaintiff breaches the contractual duty of good faith and fair dealing.  See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co., 47 Cal. App. 4th 464, 482 (1st Dist.

---

[2] Paragraph Two of the Indemnity Agreements contain the prima facie evidence clause:

> In the event of any payment of any kind by [Great American], the [defendants] further agree that in any accounting between [Great American] and the [defendants], [Great American] shall be entitled to charge for any and all disbursements made by [Great American] in good faith . . . and that the vouchers, invoices, an affidavit or other evidence of any such payments made by [Great American[ shall be prima facie evidence of the fact and amount of the [defendant]'s liability to [Great American].

(Ballinger Decl. Exs. 1-2 (emphasis added).)

1  1996)(citing Carma Developers (Cal.), Inc. v. Marathon Dev. Cal.,
2  Inc., 2 Cal. 4th 342, 371 (1992)); see Fid. & Deposit Co. of Md.
3  v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th
4  Cir. 1983) ("The only exception . . . arises when the payment has
5  been made 'through fraud or lack of good faith' on the part of
6  the surety . . . ." (quoting Engbrock v. Fed. Ins. Co., 370 F.2d
7  784, 786 (5th Cir. 1967))).  Since Great American provided
8  evidence of the bonds and payments of claims under the prima
9  facie evidence clause, the burden thus shifts to the McDevitts to
10 prove that Great American either acted fraudulently or did not
11 act in good faith.  See Fallon, 121 F.3d at 129.

12      A plaintiff does not act in good faith if the plaintiff
13 attempts to recover for claims that are not properly covered by
14 the indemnity agreement.  See Arntz, 47 Cal. App. 4th at 482.
15 But "absent an affirmative showing of fraud or bad faith, the
16 good faith of the plaintiff-surety [is] presumed."  Mountbatten
17 Surety Co. v. Szabo Contracting, Inc., 812 N.E.2d 90, 103 (Ill.
18 Ct. App. 2004) (citing U.S. Fid. & Guar. Co. v. Klein Corp., 558
19 N.E.2d 1047, 1047 (Ill. Ct. App. 1989)).

20      Under California law, "[a] bond shall be in writing
21 signed by the sureties under oath . . . ."  Cal. Civ. Proc. Code
22 § 995.320(a).  According to defendants, they are not obligated to
23 indemnify Great American because the bonds were not signed under
24 oath and thus are not valid under § 995.320(a).[3]  Great American

---

[3] Defendants also object to the court's consideration of Exhibits 3A through 3C and 4A through 4H in the Ballinger Declaration, the bonds issued by Great American on Roadway's behalf, on the grounds of insufficient foundation, lack of authentication, and hearsay.  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge,

1 argues that defendants are precluded from this argument because
2 of admissions in their answer.
3       "Statements made in a pleading may be admitted against
4 the pleader as evidence in the form of judicial admissions . . .
5 ." <u>Janich Bros., Inc. v. Am. Distilling Co.</u>, 570 F.2d 848, 860
6 (9th Cir. 1977); <u>see also</u> <u>Brooks v. Great Atlantic & Pac. Tea</u>
7 <u>Co.</u>, 92 F.2d 794, 796 (9th Cir. 1937) ("[A]dmissions in the
8 answer have the force of evidence . . . ."). Parties cannot
9 later "controvert these previously admitted facts," including at
10 summary judgment. <u>Yamaha Corp. of Am. v. ABC Int'l Traders,</u>
11 <u>Corp.</u>, 703 F. Supp. 1398, 1402 (C.D. Cal. 1988) (concluding
12 plaintiff's admissions in a complaint could not later be

---

set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Mr. Ballinger is a bond claims representative who received, assembled, developed, and analyzed the documents and claims related to the bonds that Great American executed for Roadway. (Ballinger Decl. ¶ 4.) As the assigned representative on these bonds, Mr. Ballinger has personal knowledge about the bonds, laid the proper foundation for knowledge of the bonds, and properly authenticated the bonds. Further, the McDevitts' Answer conceded that the bonds at issue were, in fact, valid. (McDevitt Answer ¶¶ 10, 12 (Docket No. 28).) Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial. See <u>Burch v. Regents of the Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006). Here, the exhibits fall within the exception to hearsay for records of a regularly conducted business activity. Fed. R. Evid. 803(6). Therefore, these objections are overruled.
      The McDevitts also raise fourteen other objections to evidence Great American submitted in support of its motion for summary judgment. (<u>See</u> Docket No. 47.) Because the court does not rely on any of the evidence objected to in the McDevitts' remaining objections, the court overrules those objections as moot.

controverted when attempting to defeat defendant's motion for summary judgment). Previously admitted facts are "conclusively binding on the party who made them." Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988).

In the First Amended Complaint, Great American alleges, "In consideration of Defendants . . . executing Agreement 1, [Great American] agreed to issue certain payment and performance bonds on behalf of Roadway Electrical Works, Inc. as principal . . . ." (First Am. Compl. ¶ 10 (Docket No. 6).) Great American alleges the same for the second indemnity agreement. (Id. ¶ 12.) In their answer, defendants admit "that [Great American] issued the payment and performance bonds identified in paragraph 10(a) – (c) of the Complaint" and "that [Great American] issued the payment and performance bonds identified in paragraph 12(a) – (h) of the Complaint." (McDevitt Answer ¶¶ 10, 12 (Docket No. 28).) The copies of the bonds referred and attached to the First Amended Complaint are the same bonds attached to the Ballinger Declaration. (Compare First Am. Compl. Ex. C, with Ballinger Decl. Exs. 3A-3C, 4A-4H.) The admission in the answer prevents the McDevitts from contesting the issuance of the bonds, but not the validity of the bonds under § 995.320.

It is undisputed that "[Great American] agreed to issue certain payment and performance bonds on behalf of Roadway . . . ." (First Am. Compl. ¶¶ 10, 12; see McDevitt Answer ¶¶ 10, 12.) It is also undisputed that Great American issued these bonds as early as November 2009, (Ballinger Decl. Ex. 3A); however, Great American did not receive the first claim on these bonds until July 2015, (id. Ex. 5.) The time span between the issuance of

10

1    the bonds and the claims on those bonds supports the veracity of
2    the bonds because it indicates that the principal, Roadway, was
3    performing in reliance on the bonds for some period of time.  For
4    example, the obligee on the November 2009 bond submitted a claim
5    only once Roadway defaulted on its subcontractor obligations in
6    October 2015--five years and eleven months after Great American
7    issued the bond.  (Id.)

8            The parties have not provided, and the court is not
9    aware of, any California case law that holds a bond is invalid if
10   the surety does not sign it under oath.  Section 995.320 of the
11   California Civil Procedure Code exists to protect the surety by
12   ensuring that a surety is not liable for a bond or the
13   principal's actions unless the surety signed the bond under oath.
14   The defendants do not dispute the issuance of the bonds, do not
15   dispute the validity of the Indemnity Agreements, and have had
16   copies of these bonds since the commencement of this action.
17   Defendants presumably did not question the validity of the bonds
18   when Roadway performed work and paid subcontractors under them.
19   Now--years after plaintiff issued the bonds--it is disingenuous
20   for defendants to claim they are not valid only because plaintiff
21   did not sign them under oath.

22           Defendants failed to show plaintiff acted in bad faith.
23   Because it is undisputed that plaintiff issued bonds under which
24   defendants agreed to indemnify plaintiff and defendants have not
25   cited any authority suggesting the bonds are invalid because
26   plaintiff did not sign them under oath, defendants have failed to
27   create a triable issue of fact with respect to their duty to
28   indemnify plaintiff.  Accordingly, the court must grant

                                    11

plaintiff's motion for summary judgment on its breach of contract claims.

        C.     Damages

The amount of damage is undisputed.  The Indemnity Agreements note that Great American can recover any losses, interest, expenses, and attorneys' fees incurred as a result of an indemnity action under the Indemnity Agreements.  (Id. Exs. 1-2.)  Great American has paid $2,579,170.90 in losses and $166,077.10 in expenses.  (Id. ¶ 23, Ex. 35.)  These amounts are supported by "vouchers, invoices, an affidavit or other evidence," namely the exhibits to the Ballinger Declaration.  (Id.)

"Provisions in indemnity agreements granting to the indemnitor the right to compromise and settle claims . . . have been upheld as not against public policy and enforced by the courts."  Transamerica, 401 F.2d at 362.  Great American's decision to settle the claims was within its purview under the Indemnity Agreements, which grant Great American broad discretion to review, evaluate, and pay claims.  (Ballinger Decl. Exs. 1-2.)

Because the McDevitts have not presented any triable issue of material fact on amount of damages, the statement of losses and expenses provided by Great American is sufficient evidence of the damages it incurred.

The Indemnity Agreements also provide that Great American is entitled to interest on the payment of claims.  (Ballinger Decl. Exs. 1-2.)  No interest rate was specified in either Indemnity Agreement.  Great American is thus entitled to the statutory rate of 10 percent per annum.  See Cal. Civ. Code §

3289 ("If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."). The accrued interest on the payments of the claims is $131,285.39. (Cabal Decl. Ex. B.)

D. <u>Defense to Indemnity Agreement</u>

"The language of a contract is to govern its interpretation, if the language is clear and explicit . . . ." Cal. Civ. Code § 1638. The McDevitts argue in a short, one-sentence paragraph at the end of their opposition to Great American's motion that they are not liable to Great American because its suit against the individual indemnitors "is effectively seeking to make the individual indemnitors liable where they otherwise would not have had any liability by virtue of the corporate veil." (Docket No. 45.)

The McDevitts signed the Indemnity Agreements in their individual capacities, and the Indemnity Agreements individually list them as "Undersigned" who agree to "exonerate, indemnify, hold harmless and keep [Great American] indemnified from . . . all liability . . . ." (Ballinger Decl. Exs. 1-2.) At the end of the agreements, Robert McDevitt signed on a line that states "Robert McDevitt, Individually" and Marlene McDevitt signed on a line that states "Marlene McDevitt, Individually." <u>Id.</u> Furthermore, Marlene McDevitt and Coddington signed the Indemnity Agreements in their official capacities as officers of Roadway and in their individual capacities, indicating the individual defendants intended to be individually liable under the Indemnity Agreements. (<u>See</u> Ballinger Decl. Exs. 1-2.)

13

1   The Indemnity Agreements are clear and explicit, the
2  McDevitts signed in their individual capacities.  See Sebastian
3  Int'l Inc. v. Peck, 195 Cal. App. 3d 803, 808-09 (2d Dist. 1987)
4  (holding corporate officer individually liable for a contract in
5  which he signed his own name, notwithstanding addition of
6  corporate title to personal signature line).  The McDevitts are
7  individually liable under the Indemnity Agreements.
8   IT IS THEREFORE ORDERED that plaintiff's motion for
9  summary judgment on its claims for breach of indemnity agreements
10 in the amount of $2,876,633.39 be, and the same hereby is,
11 GRANTED.
12 Dated:  September 20, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE